The first case today is number 182084, Sterngold Dental, LLC v. HDI Global Insurance Co. Thank you. Thank you. You gave me two. I think that's all right. It's all right. He's totally stealing my stuff again. Good morning, Your Honor. Sean Leary on behalf of the appellant Sterngold Dental, LLC. You may proceed, counsel. Thank you, Your Honor. At this juncture, if it pleases the Court, I'd like to reserve two minutes for rebuttal. Yes. Thank you, Your Honor. Once again, good morning, Your Honors. This appeal stems from a district court decision granting the appellees a motion to dismiss the complaint. The complaint was filed by my client, the appellant here, Sterngold Dental, LLC. We've briefed the issues, I think, quite well on both sides. An extensive paper of words and case law has been devoted to the arguments. And from all that paper and cases cited in the appellee's motion, as well as their respondent's brief, the motion really boils down to one main question, and that is, can a trademark be an advertising idea within the meaning of the policy that is the subject of this action? The answer is absolutely. We know this is the majority vote. If the answer to that is absolutely, so what? The policy excludes. Let's start with the policy, Mr. O'Leary. The coverage is for personal and advertising injury. It excludes those personal and advertising injuries which result from, which arise out of, among other things, trademark infringements. That statement is then followed by a line in the policy which describes other related items, which may be excluded and makes clear that advertising ideas are not under the rubric of other related items. So how does that in any way diminish the force of the exclusion for trademark infringement? Thank you, Your Honor, for cutting straight to the chase. And I think that is really the essence of the argument here. Very respectfully, Your Honor, I see that section, which is cited, I believe, on page 56 of the appendix, subsection I, differently than Your Honor. I would read, and we did read, this provision of the policy probably a hundred times before we filed suit, many more hundreds of times since. And, again, in reading that section, at best, giving benefit to HDI, it's ambiguous. I think more accurately, the language does not exclude, regardless of what the intent might be, trademark infringement from coverage from the policy. But it says that it does. I'm not talking about intent, I'm talking about language. It says it excludes certain named items, one of which is trademark, and other related items. Isn't that the precise language of the exclusion? I think once you read that sentence... Just answer my question. Doesn't that exact language appear in the sentence that is at the heart of the exclusion? I think that sentence could, in its independent nature, as cited by Your Honor, read as much, but then followed up in tandem by the following sentence. Which says what? Under this exclusion, such other intellectual property rights do not include the use of another's... That's right. But other intellectual property rights is not a phrase that's plucked from the blue. It's a phrase that's used in the prior sentence. And the logical grammatical construction of the property is that the second sentence is trying to indicate the scope of the phrase that's used in the prior sentence. If the phrase other intellectual property rights weren't used anywhere in the policy, but in the sentence you cite, your argument would have more force. But that language is used in the prior sentence, and on what basis can you argue that the second sentence isn't simply referring back to the same language in the first sentence? I think given each word, its proper due measure, when you read that second sentence, it indeed does exclude advertisement, which is other intellectual property rights as understood within the grand scope of the policy. And the policy, again, is... What do you mean understood? Are you using the term grand scope of the policy as meaning something different than I mean when I say, as that phrase is used in the immediately prior sentence? No, I think both meanings, I would describe the same interpretation and the same result. And once again, that is that the other intellectual property rights are not excluded under that section. And those other intellectual property rights necessarily, according, I think, to a fair reading, again, the policy in general and the specific section includes trademark infringement, which is what the underlying complaint alleges. I mean, I understand what your argument is. And given your client's position, it may be the best argument that's available to you. But I'm having trouble giving it much persuasive force. You know, if I say I'm barring entrance to these premises, to Tom, Dick, and Harry, and by Harry I mean a male person under 12 years old, the fact that Tom or Dick is under 12 years old isn't going to bring them within the scope of that exclusion. Because it's clear that I'm referring only to Harry. And I think that's the situation we've got with this phrase, other intellectual property rights. Respectfully, Your Honor, I see your point. I know, we disagree. I think that is a good example that we have here. Where other intellectual property rights is perhaps an unfortunate term given API's position, but that is the nature of the coverage. Didn't you have another argument too, Mr. O'Rourke? I did indeed, Your Honor, and that pertains to the slogan infringement, which is addressed sort of secondarily in our complaint. It's an alternative argument in the event that the court does not accept our preliminary argument that this does indeed constitute a slogan. And by that I mean the Ossian trademark or buzz phrase, if you will, that is used by Sterngold and once again was subject of the underlying action brought by Interloch. And that issue is briefed, I would submit, fairly extensively in our papers. Okay. Perfect timing. Thank you. Good morning. May it please the Court. Joseph Stelle of Day Pitney on behalf of the appellee, HCI Global Insurance Company. The district court got it right. The only papers that matter in this case are the underlying complaint and the insurance policy at issue here. And when you compare the allegations of the underlying complaint as against the terms of the insurance policy at issue here, it's clear that HCI Global did not have an obligation to either defend or indemnify Sterngold against Interloch's trademark infringement claims. Excuse me, counsel. I just want to make sure I understand the case correctly. I didn't think we were comparing the underlying complaint as a whole with the insurance policy. I thought the dispute here centered only on count three of the underlying complaint. That's correct, Your Honor. So we don't have to do an analysis about count one and count two. The claim that we're confronted with is that there should have been a defense and indemnity provided with respect to count three. Correct, Your Honor. If count three triggered coverage, you'd have to defend the entire complaint. The district court properly determined that count three does not trigger coverage under policy because that trademark infringement claim, regardless of how you frame it, no matter how you look at it, arises solely out of the allegation that Sterngold infringed upon Interloch's trademark, OSEAN. And you can look no further than Sterngold's own brief at page 20 where they say, the crux of the underlying complaint centers around Interloch's allegations that it was injured by Sterngold's use in its advertisement of Interloch's advertising ideas, namely the OCO, OSEOS, and OSEAN name. So clearly the underlying claim arises out of an alleged infringement of a trademark. There are no other allegations that Sterngold stole some sort of intellectual property that belonged exclusively to Interloch here. There's no suggestion of an advertising idea outside of the context of a trademark. There's no suggestion of a slogan outside of the context of a trademark. As Sterngold itself says, the supposed advertising idea is the use of the trademark. The supposed slogan is the use of a trademark. There's a third exception to the exclusion, which is trade dress. Now I take it if we were talking about bottles of certain soft drinks like Coca-Cola, trade dress would include not only the unique shape of the bottle but also the unique trademark Coca-Cola that's on that bottle. Am I right about that? No, Your Honor. That would include the entirety of the trade dress, not just individual parts. But it would also include the trademark name in that circumstance, right? It would be part of the trade dress. And so the difference here is that we're just talking about the one word? Correct. It's the use of the trademark. And the issue with respect to that is that it's clear that… So even a policy like this that excludes trademarks could include trademarks if they were part of the trade dress claim? It depends on the allegations, Your Honor. So if it's trademark infringement, it's out. If it's a trade dress claim, it's in. Well, it's not simply if it's a trademark infringement claim. It's whether there's loss alleged to have arisen out of the infringement of a trademark. So you don't have to necessarily have a claim that is specifically trademark infringement. It could also be you committed some unfair or deceptive trade practice by using this trademark that you shouldn't have. That's also excluded? Yes. So anything that arises out of the infringement of a trademark, regardless of how you cast the claim, what cause of action you allege, that is subject to this exclusion. Because Massachusetts law is very clear about this, that the arising out of language is given a very broad construction, almost akin to forecausation. As this court said in the Braza sports case, it encompasses anything related to or arising in any way tied to the alleged wrongful conduct. In the Braza sports case, there was an exclusion for any loss arising out of a product. There, the plaintiffs alleged not a product liability claim, but instead that the gun manufacturers had flooded the market with guns and acted negligently in the way they had sold their products. And the court said, well, listen, arising out of is going to encompass that too. And here, it's clear that when you look at the underlying complaint, the only allegedly wrongful conduct with respect to trademark infringement, the trademark infringement claim, is the use of the trademarks. Let me ask you this. I know you're going to tell me this has nothing to do with this case, and you may be right. But it seems that the language that we're dealing with also deals with copyrights. And it seems that copyrights are both excluded and accepted from the exclusion. I don't know what to make of that language, and so I'm going to ask if you know what to make of the two. You know what I'm referring to as the two references to copyright. And isn't it possible that that so confuses this section of the policy that we ought to look at it with a little more generous eye, and that might bring back in the argument that your brother makes that we can look at the cases that deal with advertising ideas that are not expressly excluded under the trademark cases? Do you follow the question? Yes, Your Honor. What do you say to that? First of all, it has nothing to do with this case. Second of all, no, it doesn't create any confusion. And the reason why it doesn't create any confusion is that you have to look at the exclusion in the context of the enumerated offenses. So when you go back and look at the definition of personal and advertising injury, which we cited at ECF 6-3, page 29, sections F and G are the important ones. What they say is, first, the use of another's advertising idea in your advertisement. And then G says, infringing upon another's copyright, trade dress or slogan, in your advertisement. So the exclusion here, when it talks about copyright, is making clear that copyright outside the context of your advertisement is different. So it doesn't create any ambiguity. Here, you can have an advertising idea that doesn't include a trademark. That's covered. But if it includes a trademark, and the premise of the underlying claim is that the plaintiff has been wronged and injured because of the use of the trademark, that's excluded because the claim and the injury flowing from there arises out of the trademark and the infringement of the trademark. So when read independently, the exclusion is unambiguous. But certainly when read in the context of the enumerated offenses, it's unambiguous. With respect to the slogan argument, again, first of all, it's not a slogan. It's a trademark. It's a name. A slogan is a distinctive cry that draws your attention to the product. A classic example being, you know, where's the beef? Or Wendy's. Do you agree with the district court's distinction between the two as saying that trademarks are source identifiers whereas slogans are promotional wording? Yes, Your Honor, I do agree. But that distinction doesn't matter in the context of this case because ultimately what they're saying is the slogan is this trademark name. And so, again, you have a situation in which the alleged wrongful conduct, alleged harm arises out of the improper use of a trademark. But that may be the long way around the barn because if you accept the district court's view, it's not a slogan at all. Yes, it is the long way around the barn, and I'd rather go straight through it. It's not a slogan. It's not, like the Ninth Circuit said, a distinctive cry that draws your attention to the product, to the name of the product. It's the actual name of the product. Well, it may be the actual name of the product. You can have a slogan, I suppose, that doesn't use the product name. Sure. I think a good example is recently I was driving past one of those companies that delivers port-a-potties, and it's like Johnny Port-a-Potty. And on the side of the truck it said, we're number one in number two. That's the slogan. Not a messy one, but a slogan. It's a messy one. It's an amusing one, too. And I thought the arguments were at such a high level up to this point. Welcome to the real world, Judge Howard. Your Honor, I'm a simple caveman lawyer. So, Your Honor, the district court got it right. The underlying complaint, the alleged claim to trigger coverage, arises solely out of infringement of trademark. If you take away the infringing of the trademark allegations, there's no claim there. And, therefore, this exclusion clearly applies. And, in addition, it's not an enumerated offense. So district court should affirm the district court's decision. Thank you, Your Honor. Thank you. Thank you, Your Honor. And, very briefly, I appreciate the rebuttal time. I would simply seek to reiterate Your Honor's reference to the ambiguity of this particular provision. And, given that ambiguity, there is case law that that ought to be construed against the drafter of the policy, which is HDI. And, once again, as Your Honor mentioned, given the ambiguity, a broader scope, I believe, ought to be given to the other intellectual property rights that Judge Selye and I have been discussing. Given that broader scope, the exclusion does not apply to prohibit coverage here on the part of HDI towards Sterngold. And, if there are no further questions, I would rest on that argument and our briefs. All right. Thank you. Wait a minute. I have a question. Was this a negotiated policy? I'm sorry, Your Honor? Did you try to negotiate this policy or did they just accept the policy that was presented to him or her? It was the latter, Your Honor. It was not a negotiation with respect to the policy. Uh-huh. Thank you. Certainly.